# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WENDY WILLARD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 11-04543 |
| | : | |
| THE PENNSYLVANIA SOCIETY FOR THE | : | |
| PREVENTION OF CRUELTY TO ANIMALS, | : | |
| GEORGE BENGAL, AND TARA LOLLER, | : | |
| | : | |
| Defendants. | : | |

## Memorandum

YOHN, J.                                                                                                          April 23, 2012

Plaintiff, Wendy Willard, brings this action under 42 U.S.C. § 1983 against defendants, the Pennsylvania Society for the Prevention of Cruelty to Animals (the "PSPCA") and two of its employees, George Bengal and Tara Loller, alleging violations of her civil rights in connection with their search of her property and confiscation of a dozen dogs. Currently before the court is defendants' motion to dismiss Willard's complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, I will grant the defendants' motion.

**I.     Factual Background and Procedural History[1]**

Willard is the owner of a nationally recognized pack of basset hounds. (Compl. ¶ 13.)

---

[1] The following summary is based on the allegations in Willard's complaint, which I assume to be true for purposes of defendants' motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

During 2009, Willard's pack consisted of twenty-three dogs, two of which resided with Willard in her residence. (*Id*. ¶¶ 13-14, 16.) The other twenty-one dogs lived in a heated barn on Willard's two-acre property approximately 200 feet from her residence. (*Id*. ¶¶ 14, 16.) Willard's property borders, in part, a 340-acre wooded property owned by the Schuylkill Center for Environmental Education ("SCEE"). (*Id*. ¶ 14.)

The PSPCA is a non-profit corporation that is empowered to enforce Pennsylvania laws pertaining to cruelty to animals through its humane-society police officers.[2] (*Id*. ¶ 8.) On July 21, 2009, Loller, a humane-society police officer, visited Willard's residence but, finding the residence empty, left her business card on Willard's door. (*Id*. ¶¶ 11, 18.) Loller returned again on July 27, 2009, this time accompanied by PSPCA officers Bengal and Leonard Knox, and Pennsylvania Department of Agriculture's Bureau of Dog Law Enforcement ("BDLE") dog wardens Joe Laughlin and Kristin Donmoyer.[3] (*Id*. ¶ 19.) Bengal remained at the top of the private lane leading to Willard's residence, approximately 1/4 mile away, while Loller, Knox, Laughlin, and Donmoyer requested permission to search the barn. (*Id*.) Willard refused to allow her barn to be searched and the officers and wardens left her property. (*Id*. ¶ 20.)

According to Willard, the officers and wardens proceeded to trespass on SCEE property, the property of another adjoining landowner, and her property in order to observe the fenced-in exercise area behind Willard's barn. (*Id*. ¶¶ 23-27.) From their trespassing vantage point, the

---

[2] Under 18 Pa. Cons. Stat. § 5511(i) "[a]n agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of the Commonwealth, shall have the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure."

[3] Under 3 Pa. Stat. Ann. § 459-901 "[s]tate dog wardens, employees of the department and police officers, shall be charged with the general enforcement of [dog] law."

officers and wardens observed Willard cleaning this outdoor exercise area. (*Id*. ¶ 27.)

The officers and wardens left to obtain search warrants. (*Id*. ¶ 29.) PSPCA officers may obtain a search warrant based upon probable cause. (*Id*. ¶ 30.) The PSPCA officers procured a warrant based on allegations that they had observed Willard cleaning feces from the exercise area behind her barn and that Willard was not permitting them to investigate her. (*Id*. ¶ 29.) Unlike PSPCA officers, "dog wardens may apply for administrative warrants based on allegations about the number of dogs." (*Id*. ¶ 30.) The dog wardens also obtained a search warrant. (*Id*. ¶ 29.)

Around 5:00 p.m. on July 27, 2009, PSPCA officers Loller and Knox, dog wardens, and City of Philadelphia police officers returned to execute the two warrants and search Willard's property. (*Id*. ¶ 31.) Bengal joined the search sometime later that evening. (*Id*. at 8 n.6.) Dog warden Donmoyer remained with Willard in her residence while the others searched and photographed the barn. (*Id*. ¶ 35.) Upon returning from the barn, Loller accused Willard of not complying with Philadelphia's "limit law," which prohibits keeping more than twelve dogs in a residential dwelling, and stated that the PSPCA would have to seize the dogs to bring Willard into compliance. (*Id*. ¶ 36.) Willard chose eleven of her dogs to turn over to the PSPCA and signed surrender agreements for each. (*Id*. ¶¶ 42, 48, 50, 53.)

Willard maintains that she was coerced into signing the surrender agreements by (1) false threats to take all twenty-three of her dogs if she did not sign the agreements; (2) statements that one of the dog wardens was going into diabetic shock and needed medical attention; (3) threats to issue her so many citations that the PSPCA would "own her home"; and (4) the refusal of Bengal and Loller to leave her kitchen without signed surrender agreements. (*Id*. ¶ 42.) Willard, who was tearful and distraught, allegedly did not have time to read the agreements before surrendering her

dogs. (*Id*. ¶ 53.)

Since July 27, 2009, ten of the dogs Ms. Willard surrendered have been sterilized and sold or placed for adoption by the PSPCA. (*Id*. ¶ 59.) The eleventh dog was euthanized by the PSPCA following a botched surgical procedure. (*Id*. ¶ 60.)

On August 10, 2009, the PSPCA served Willard with twelve citations for depriving her dogs of veterinary care, ten citations for depriving her dogs of access to clean and sanitary shelter, and two code-violation notices for violating the "Animal Sounds" law. (*Id*. ¶¶ 62, 68.) The code violations were dismissed at a hearing on November 17, 2009, and Willard has not been convicted of any of the twenty-two other citations. (*Id*. ¶¶ 66, 69.) Between May 20, 2010, and August 13, 2010, Willard received at least forty-three notices to make an appointment for inspection from the PSPCA, even though she has never been adjudicated to be in violation of any ordinance. (*Id*. ¶ 70.)

As a result of these events, Willard filed a complaint against the defendants on July 18, 2011, alleging violations of her civil rights. In count I, Willard requests a declaratory judgment that the defendants violated the Fourth and Fourteenth Amendments to the United States Constitution by unconstitutionally searching and seizing her property and by depriving her of property without due process of law.[4] Willard brings counts II, III, and V against all defendants under 42 U.S.C. § 1983 for unconstitutional search and seizure in violation of the Fourth Amendment, denial of procedural due process in violation of the Fourteenth Amendment, and

---

[4] Defendants argue that count I should be dismissed as "redundant and not in conformity with Rule 8(a)(3)." *Kauffman v. Pa. SPCA*, 766 F. Supp. 2d 555, 560 (E.D. Pa. 2011). Willard responds that this is a matter for my discretion. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Resp.") 11.) Because Willard has included a request for a declaratory judgment in her prayer for relief, I will grant defendants' motion to dismiss count I.

denial of substantive due process in violation of the Fourth and Fourteenth Amendments, respectively. Count IV is asserted against the PSPCA and Bengal under 42 U.S.C. § 1983 for inadequate training and supervision of humane-society police officers.

Defendants filed a motion to dismiss all five counts of the complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

**II.    Standard of Review**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

In evaluating a motion to dismiss, a court should separate the "the factual and legal elements of a claim." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11. The assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Rather, the complaint must contain "'enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v.*

*Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

**III.     Discussion**

"[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Here, the first element—whether the conduct complained of was committed by a person acting under color of state law—is not disputed. However, defendants do dispute whether their alleged conduct, if true, violated Willard's constitutional rights. As described in greater detail below, I conclude that Willard has failed to state a plausible claim for the deprivation of her constitutional rights.

    **A.     Unconstitutional Search and Seizure (Count II)**

The Fourth Amendment to the United States Constitution provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Willard alleges that the PSPCA's search warrant was not supported by probable cause and thus the search of her property and the seizure of her dogs

violated the Fourth Amendment.[5] *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001) (concluding that pet dogs are personal property protected by the Fourth Amendment). Specifically, Willard contends that the affidavit of probable cause, executed by Loller, contained material misstatements and omissions including (1) the inappropriate implication that Willard ignored a directive to contact the PSPCA, when Loller merely left a PSPCA business card on Willard's door without any explanation or actual request to be contacted, and (2) the intentional omission of the fact that any observations of Willard's barn and exercise area were made from a trespassing viewpoint. Finally, Willard contends that even if the allegations of the affidavit were correct, the allegations still fall short of establishing probable cause.

Assuming that Willard's allegations concerning the PSPCA warrant are true, as I must in deciding this motion to dismiss, Willard has failed to state a claim for the violation of her Fourth Amendment rights. Even if I were to invalidate the PSPCA's search warrant, it would not necessarily follow that the search of her property was unconstitutional. The humane-society officers, dog wardens, and Philadelphia police officers who searched Willard's property on July 27, 2009, were executing *two* search warrants simultaneously—the PSPCA's search warrant and

---

[5] Willard also seeks redress for this "unconstitutional" search and seizure in count V under the substantive due-process component of the Fourteenth Amendment. This claim is barred by the "more-specific-provision rule." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010). "Under this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Id*. (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Willard's claims concerning the seizure of her dogs and the search of her property must be analyzed under Fourth Amendment principles, not substantive due-process jurisprudence. Accordingly, I will dismiss count V of the complaint. *See Schor v. N. Braddock Borough*, 801 F. Supp. 2d 369, 379-80 (W.D. Pa. 2011) (dismissing plaintiff's substantive due-process claim because the Fourth Amendment more directly addresses the destruction of his dog); *Copenhaver v. Borough of Bernville*, No. 02-8398, 2003 U.S. Dist. LEXIS 1315, at *14-16 (E.D. Pa. Jan. 9, 2003) (same).

the dog wardens' search warrant. Thus, even if the PSPCA's warrant falls, the search of Willard's property was still conducted pursuant to a warrant.

Willard does not challenge the validity of the dog wardens' warrant. Instead, she argues that the PSPCA and the BDLE are "two separate and distinct organizations whose actions are governed by separate and distinct standards. Defendant PSPCA cannot shirk its responsibility simply by accompanying [the] BDLE in the same manner that police officers cannot avoid the necessity of probable cause by accompanying parole officers during searches pursuant to a convicted criminal's conditions of parole."[6] (Pl.'s Resp. 15-16.) Apparently relying on the "stalking horse" theory that has been rejected by the Third Circuit.

The "stalking horse" theory developed in the context of collaboration between police officers and parole or probation officers. In most cases, police officers are permitted to conduct searches only when they have probable cause. Parole or probationary searches, on the other hand, often require only a reasonable suspicion, a lesser burden. Out of the collaboration between these two law-enforcement communities subject to different standards, was born the "stalking horse"

---

[6] It bears repeating that 42 U.S.C. § 1983 provides a method for vindicating federal rights. An action alleging that the PSPCA violated state law will not lie under section 1983 where there has been no violation of the rights, privileges, or immunities secured by the Constitution or laws of the United States. If Willard believes that any violation of state regulations governing the PSPCA is a per se violation of her Fourth Amendment rights, she is mistaken. *Cf. United States v. Laville*, 480 F.3d 187, 189 (3d Cir. 2007) (noting that for purposes of determining whether an arrest was supported by probable cause "a violation of state or local law is not . . . a per se violation of the Fourth Amendment"). "It is well understood . . . that '[m]ere violation of a state statute does not infringe the federal Constitution.'" *Id.* at 192 (quoting *Archie v. City of Racine*, 847 F.2d 1211, 1216-17 (7th Cir. 1988) (en banc)).

theory. The "stalking horse" theory has been described in these terms:

> A probation officer acts as a stalking horse if he conducts a probation search on prior request of and in concert with law enforcement officers. However, collaboration between a probation officer and police does not in itself render a probation search unlawful. The appropriate inquiry is whether the probation officer used the probation search to help police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his own legitimate objectives. A probation officer does not act as a stalking horse if he initiates the search in the performance of his duties as a probation officer.

*United States v. Williams*, 417 F.3d 373, 377 (3d Cir. 2005) (quoting *United States v. Watts*, 67 F.3d 790, 794 (9th Cir. 1995)) (internal citations omitted). In other words, according to this theory, "a parole search may be invalidated 'when it is nothing more than a ruse for a police investigation.'" *Id*. (quoting *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997)).

Willard's analogy to the "stalking horse" theory is appealing insofar as the PSPCA's and the BDLE's burdens for obtaining search warrants are different, not unlike the disparate standards governing police officers and parole officers. However, this analogy to the "stalking horse" theory ultimately does little to help Willard's case because the "stalking horse" theory is "clearly barred." *Williams*, 417 F.3d at 378.

In *Williams*, a case considering the propriety of a parole search in light of collaboration between parole officers and police officers, the Third Circuit rejected the "stalking horse" theory. 417 F.3d at 377. The court stated that the teachings of the Supreme Court in *United States v. Knights*, 534 U.S. 112, 122 (2001), and *Whren v. United States*, 517 U.S. 806, 813 (1996), prohibit an examination of the underlying purpose of a probationary search. *Williams*, 417 F.3d at 377-78. Rather, the court concluded that "ordinary Fourth Amendment analysis dictates the propriety of a search." *Id*. at 378.

9

Thus, by extension, I need only ask whether under "ordinary Fourth Amendment analysis" the search of Willard's property was proper. "The touchstone of the Fourth Amendment is reasonableness." *Knights*, 534 U.S. at 118. According to Willard's own allegations, the search of her property occurred pursuant to a warrant obtained by the BDLE. Willard does not challenge the sufficiency, reasonableness, or constitutionality of this warrant. At most, she complains about the collaboration between the PSPCA and the BDLE. Borrowing again from Willard's own analogy, I note that the Third Circuit has concluded that "the mere fact of collaboration" between parole officers and police officers "is certainly not enough to invalidate a parole search" since "such collaboration is expected given the similar duties of parole officers and police officers." *Williams*, 417 F.3d at 377. Nothing in Willard's complaint suggests that the mere fact of collaboration between the PSPCA and the BDLE, which share "similar duties," should invalidate a search of Willard's property pursuant to a seemingly valid warrant issued to the BDLE.

Willard has failed to state a plausible claim for violation of her Fourth Amendment rights, and I will therefore grant defendants' motion to dismiss count II.

### B.     Procedural Due Process (Count III)

Willard claims that the defendants failed to comply with the procedural requirements of 22 Pa. Cons. Stat. §§ 3701 *et seq.*, governing the seizure of private property by the PSPCA, when they confiscated her dogs, and thus deprived her of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution. (Compl. ¶¶ 90-91.) "To maintain an action for intentional or negligent deprivation of property under § 1983, Plaintiff must show that: (1) Defendants acted under color of state law; and (2) Plaintiff has no adequate post-deprivation state remedy to redress the wrong." *Marsh v. Ladd*, No. 03-5977, 2004 U.S.

Dist. LEXIS 22195, at *21-22 (E.D. Pa. Oct. 27, 2004) (*citing Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). This follows from the Supreme Court's statement that random, unauthorized deprivations of property by state officials, whether intentional or negligent, do not violate due process if there is an adequate state post-deprivation remedy. *Hudson*, 468 U.S. at 533 (intentional deprivation); *Parratt*, 451 U.S. at 537-43 (negligent deprivation).

Defendants argue that Willard's claim fails because she has not alleged that she availed herself of the post-deprivation remedies available to her, and because she has not alleged that those remedies are inadequate. I agree.

In Pennsylvania, "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for return of the property on the ground that he or she is entitled to lawful possession thereof." Pa. R. Crim. Pro. 588. As defendants point out, Willard does not allege in her complaint that she availed herself of the remedy embodied in Pennsylvania Rule of Criminal Procedure 588. Instead, Willard responds in her brief opposing defendants' motion to dismiss that she filed an "omnibus pretrial motion challenging, among other things, the validity of the search warrant and demanding the return of her property."[7] (Pl.'s Resp. 16.) Willard attached a copy of this motion, which she characterizes as a "public record," to her brief but not to her complaint. This will not suffice. Even if I take judicial notice of this exhibit,[8] Willard alleges only that she made an omnibus motion—she does not address what became of the

---

[7] The omnibus motion makes no reference to Rule 588. In fact, the motion only references the return of Willard's dogs in one of eleven claims for relief. Neither party has addressed whether such an omnibus motion properly presents a request for relief under Rule 588.

[8] "When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998).

11

motion. She could have withdrawn the motion, she could have had a hearing on it, a judge could have granted it, or a judge could have denied it. I will not search through twenty-two separate state dockets related to this matter in an effort to find such basic information, which Willard should have pleaded in her complaint.

Furthermore, courts have consistently held that Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy. *Welsch v. Twp. of Upper Darby*, No. 07-4578, 2008 U.S. Dist. LEXIS 65500, at *20 (E.D. Pa. Aug. 26, 2008); *Taylor v. Naylor*, No. 04-1826, 2006 U.S. Dist. LEXIS 27319, at *1 (W.D. Pa. Apr. 26, 2006); *Marsh*, 2004 U.S. Dist. LEXIS 22195 at *22; *Potts v. City of Phila.*, 224 F. Supp. 2d 919, 938 (E.D. Pa. 2002). And Willard does not allege otherwise. At most, Willard argues in her brief—not her complaint—that the "PSPCA effectively made such remedy impossible to obtain. . . . [because] the PSPCA sold . . . ten of the eleven dogs seized by mid-January 2011." (Pl.'s Resp. 17.) However, Willard's omnibus pretrial motion was filed on December 4, 2009, when the dogs were presumably still in the PSPCA's custody. (Pl.'s Resp. Ex. L) Thus, Willard's claim that her post-deprivation remedy was inadequate because the dogs were sold approximately eighteen months after they were seized and thirteen months after she allegedly brought an omnibus motion, is not plausible on its face.[9]

---

[9]Additionally, it has been suggested that the common-law tort of conversion provides adequate post-deprivation remedies where plaintiff's property has been destroyed and Rule 588 is thus inadequate. *See, e.g.*, *Taylor*, 2006 U.S. Dist. LEXIS 27319, at *10; *Marsh*, 2004 U.S. Dist. LEXIS 22195, at *22-24.

Willard has not sufficiently alleged a section 1983 procedural due-process claim against any of the defendants, and I will grant defendants' motion to dismiss count III.[10]

## IV.   Conclusion

For the reasons explained above, I will grant defendants' motion to dismiss plaintiff's complaint. An appropriate order accompanies this memorandum.

---

[10] Willard brings count IV against the PSPCA and Bengal under 42 U.S.C. § 1983 for inadequate training and supervision of humane-society police officers. Local governmental agencies may be held liable for constitutional violations caused by official custom and policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). But a municipality cannot be liable for the failure to supervise or train an officer when there is no underlying constitutional violation by the officer. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Put another way, "any claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. Pa. 2010). Because I conclude that Willard has failed to state a plausible constitutional violation, her claims based upon an unconstitutional policy or custom also fail. Therefore, I will grant defendants' motion to dismiss count IV.